IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **ANNALEAH E.,**[1]<br><br>        Plaintiff,<br><br>      v.<br><br>**KILOLO KIJAKAZI,** Acting<br>Commissioner of Social Security,<br><br>        Defendant. | Case No. 1:21-cv-137-SI<br><br>**OPINION AND ORDER** |

John E. Haapala, Jr., HAAPALAW LLC, 401 E. 10th Avenue, Suite 240, Eugene, OR 97401. Of Attorney for Plaintiff.

Scott Erik Asphaug, Acting United States Attorney, and Renata Gowie, Civil Division Chief, UNITED STATES ATTORNEY'S OFFICE, 1000 SW Third Avenue, Suite 600, Portland, OR 97204; Jacob Phillips, Special Assistant United States Attorney, OFFICE OF GENERAL COUNSEL, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

      Plaintiff Annaleah E. seeks judicial review of the final decision of the Commissioner of

the Social Security Administration (Commissioner) denying Plaintiff's application for Disability

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party in this case. When applicable, this Opinion and Order also uses the same designation for a non-governmental party's immediate family member.

Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Title II and VXI respectively of the Social Security Act (Act). For the reasons explained below, the Court REVERSES and REMANDS the Commissioner's decision.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

When the evidence is susceptible to more than one rational interpretation, the Court must uphold the Commissioner's conclusion. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

## BACKGROUND

### A. Plaintiff's Application

Plaintiff applied for DIB on May 19, 2015 and applied for SSI on May 20, 2015, originally alleging a disability onset date of November 1, 2011. AR 377, 381. The agency denied Plaintiff's claims initially and upon reconsideration. AR 254-56, 259-62, 266-69, 269-71. Plaintiff filed a written request for a hearing and subsequently appeared before an administrative law judge (ALJ) on August 11, 2017, at which time Plaintiff amended her alleged onset date to January 1, 2016. AR 144, 149-50.

Plaintiff was born on June 7, 1974 and was 41 years old as of the amended alleged disability onset date. AR 243. The ALJ issued a decision denying Plaintiff's claim for benefits. AR 233-35. Plaintiff requested review of the ALJ's decision, and the Appeals Council granted the request, remanding the case for another hearing. AR 323, 250.

On July 20, 2020, Plaintiff appeared before an ALJ for a second hearing. AR 58. The ALJ issued a decision denying Plaintiff's claim for DIB and SSI and Plaintiff subsequently requested review. AR 34, 371-73. Plaintiff submitted additional evidence to the Appeals Council, including "Treating Source Statements" from treating providers Dr. Shaun Rajah, MD and Gail Giltner, FNP-C (Nurse Giltner). AR 2, 7-11, 15-18. The Appeals Council denied Plaintiff's request for review on December 4, 2020, finding that the new evidence did not show a reasonable probability that it would change the outcome of the decision. AR 2. The ALJ's decision thus became the final decision of the Commissioner; Plaintiff seeks judicial review of this decision pursuant to 42 U.S.C. § 405(g). AR 1-3.

### B. The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or

can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. §§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

1. Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2. Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3. Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" (RFC). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e),

       416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4. Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5. Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

      The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

## C. The ALJ's Decision

      As a preliminary requirement for Plaintiff's DIB claim, the ALJ found that Plaintiff met the insured status requirements of the Act through June 30, 2018. AR 40. The ALJ proceeded to

the sequential analysis for both claims. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the amended alleged onset date, January 1, 2016. *Id.* At step two, the ALJ determined that Plaintiff has the following severe impairments: degenerative disc disease of the cervical and lumbar spines, depressive disorder, anxiety disorder, migraines, and carpal tunnel syndrome. *Id.*

At step three, the ALJ concluded that none of the impairments, either individually or in combination, met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id*. The ALJ next assessed Plaintiff's RFC, finding that Plaintiff could perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), with limitations on climbing, stooping, kneeling, crouching, and crawling. AR 42. The ALJ determined Plaintiff's RFC included the ability to occasionally reach overhead and frequently handle and finger bilaterally, but Plaintiff would require the ability to alternate between sitting and standing at will. AR 42-43. To reach these conclusions, the ALJ considered opinions from the examining state agency physician and psychologist, opinions from Plaintiff's treating providers, Plaintiff's subjective symptom testimony, and Plaintiff's treatment history. AR 43-48. Based on the limitations in Plaintiff's RFC, the ALJ found that Plaintiff could not perform any past relevant work. AR 48.

At step five, relying on the testimony of a vocational expert, the ALJ found that, considering Plaintiff's age, education, work experience, and RFC, Plaintiff could perform jobs that exist in significant numbers in the national economy, including flower picker, chicken cleaner, and electrode cleaner. AR 49. The ALJ thus concluded that Plaintiff was not disabled. AR 50.

# DISCUSSION

Plaintiff argues that the ALJ erred by improperly discounting Plaintiff's subjective symptom testimony. Specifically, Plaintiff contends that the ALJ's reasons were not clear and convincing and were not supported by substantial evidence in the record. The ALJ provided the following reasons for discounting Plaintiff's testimony: (1) Plaintiff's inconsistent treatment and failure to comply with treatment recommendations; (2) Plaintiff's improvement with treatment; and (3) lack of supporting objective medical evidence. Plaintiff also argues that the new evidence Plaintiff submitted to the Appeals Council from Dr. Rajah and from Nurse Giltner, renders the ALJ's decision regarding Plaintiff's subjective symptom testimony unsupported by substantial evidence. The Court considers this new evidence in evaluating the ALJ's consideration of Plaintiff's subjective testimony and does not separately analyze this argument by Plaintiff.

## A. Standards for Reviewing the ALJ's Evaluation of Plaintiff's Subjective Symptom Testimony

A claimant "may make statements about the intensity, persistence, and limiting effects of his or her symptoms." SSR 16-3p, 2017 WL 5180304, at *6 (Oct. 25, 2017).[2] There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v.*

---

[2] Effective March 28, 2016, Social Security Ruling (SSR) 96-7p was superseded by SSR 16-3p, which eliminates the term "credibility" from the agency's sub-regulatory policy. SSR 16-3p; Titles II and XVI: Evaluation of Symptoms in Disability Claims, 81 Fed. Reg. 14166 (Mar. 16, 2016). Because, however, case law references the term "credibility," it may be used in this Opinion and Order.

*Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, "the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46).

The ALJ must give clear and convincing reasons for rejecting Plaintiff's subjective symptom testimony. *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). Additionally, the ALJ must specifically identify the testimony he or she is rejecting and explain what evidence undermines the testimony. *Id.* "The evidence upon which the ALJ relies must be substantial." *Id.*

## B. The ALJ's Evaluation of Plaintiff's Testimony

At the hearing on July 20, 2020, Plaintiff testified that she can only stand in a stationary position for about "10 minutes before it's too overwhelming, and [she] just go[es] to sit down." AR 77. If standing for a longer period, Plaintiff described experiencing pain in her lower back, but admitted that walking is better than standing still. AR 77-78. Plaintiff testified that she experiences neck pain, and that she often needs to sit in a reclining chair and use a supportive neck pillow. AR 76. Plaintiff stated that leaving the house without supporting her neck can

increase her pain level from a "four" to "eight or nine." AR 75, 82. As for carpal tunnel syndrome, Plaintiff testified that she has "a lot of trouble with [her] hands," and although it is "a little bit better" after receiving carpal tunnel release surgery, she still has trouble with sharp pains through her hands and arms, particularly when doing repetitive motions. AR 79-80. Plaintiff testified that medication and muscle relaxers help with the pain, but that she cannot take the muscle relaxers often because they make her very sleepy. AR 84. Regarding her migraine headaches, Plaintiff described that Botox treatment has decreased the frequency and severity of her headaches from about 20 days a month, lasting all or most of the day, to about one to two headaches per week, lasting about two hours. AR 85-87.

For her mental health limitations, Plaintiff testified that she used to see a counselor, but no longer sees one, citing "severe anxiety" that affects her ability to leave the house. AR 87. Plaintiff stated that she missed therapy appointments due to "just not being able to physically drive there." *Id*. Plaintiff also testified that she has dealt with depression nearly her whole life. AR 88.

### 1. Treatment History

The amount of treatment is "an important indicator of the intensity and persistence of [a claimant's] symptoms." 20 C.F.R. §§ 416.929(c)(3); 404.1529(c)(3). Thus, failure to seek treatment is a basis on which to deny disability. 20 C.F.R. §§ 416.930(b); 404.1530(b). If, however, the claimant has a good reason for not seeking treatment, failure to seek treatment is not a proper basis for rejecting the claimant's subjective symptoms. *See* 20 C.F.R. §§ 416.930(c) 404.1530(c); *see also Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir. 1995) ("We certainly agree with all the other circuits that a disabled claimant cannot be denied benefits for failing to obtain medical treatment that would ameliorate his condition if he cannot afford that treatment."). Thus, an ALJ must consider a claimant's reasons for failing to adhere to recommended treatment

before making an adverse credibility finding. *See Smolen*, 80 F.3d at 1284; *see also* Social Security Ruling (SSR) 16-3p, *available at* 2017 WL 5180304, at *9 (Oct. 25, 2017) (explaining that an ALJ "may need to contact the individual regarding the lack of treatment or, at an administrative proceeding, ask why he or she has not complied with or sought treatment in a manner consistent with his or her complaints" and that the Commissioner "will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints").

"Persistent attempts to obtain relief of symptoms, such as increasing dosages and changing medications, trying a variety of treatments, referrals to specialists, or changing treatment sources may be an indication that an individual's symptoms are a source of distress and may show that they are intense and persistent." SSR 16-3p, *available at* 2017 WL 5180304, at *9. An ALJ "may need to contact the [Plaintiff] regarding the lack of treatment or, at an administrative proceeding, ask why he or she has not complied with or sought treatment in a manner consistent with his or her complaints" and that the Commissioner "will not find an individual's symptoms inconsistent with the evidence . . . without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints." *Id.*

In this case, the ALJ stated that "it appears inconsistent for [Plaintiff] to describe extremely debilitating [mental health] symptoms while simultaneously failing to adhere to a treatment regimen." AR 45. Yet the ALJ also acknowledged that Plaintiff underwent counseling from early 2016 through mid-2017. AR 44-45. The ALJ also stated that Plaintiff had taken medication for her mental health symptoms, ceased taking the medication, and had since

resumed taking mental health medication. AR 45. The ALJ characterized this departure as "inconsistent adherence to treatment." *Id.* Following Ninth Circuit precedent, however, this Court is cautious to characterize such actions as evidence of failure to adhere to treatment, considering Plaintiff's diagnoses. *See Garrison v. Colvin*, 759 F.3d 995, 1018 n. 24 (9th Cir. 2014) ("[W]e do not punish the mentally ill for occasionally going off their medication when the record affords compelling reason to view such departures from prescribed treatment as part of claimants' underlying mental afflictions.").

In *Cope v. Colvin*, this Court did not find that the claimant had failed to engage in significant mental health treatment when the claimant had provided a sufficient explanation that reflected the reasons he did not continue counseling. 2015 WL 1970438, at *6 (D. Or. Apr. 30, 2015). In *Cope*, the claimant cited psychological distress at reliving traumatic events from his childhood. *Id.* Similarly, here Plaintiff has credited her failure to continue with counseling to severe anxiety that limits her ability to leave the house. AR 87. "The Ninth Circuit has criticized reliance on a lack of treatment to reject mental complaints, opining that it is 'a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation.'" *Cope*, 2015 WL 1970438 at *6 (quoting *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996)).

The ALJ also cited Plaintiff's "inconsistent and relatively sporadic" treatment history for her physical afflictions in concluding that Plaintiff's treatment history does not support a claim of total disability. AR 44. In support of this finding, the Commissioner cites *Fair v. Bowen*, arguing that an ALJ may discount a claimant's allegations based on "unexplained, or inadequately explained, failure to . . . follow a prescribed course of treatment." 885 F.2d 597, 603-04 (9th Cir. 1989). *Fair* differs from this case because the ALJ here did not identify that

additional treatment was ordered by any of Plaintiff's treating physicians. The ALJ did not specifically determine that Plaintiff failed to follow a prescribed course of treatment—the ALJ merely stated that "it is unclear whether more intensive or more extended physical therapy would have provided additional benefit." AR 44. Because the ALJ did not specifically identify a prescribed course of treatment that Plaintiff failed to follow, the ALJ erred by rejecting Plaintiff's testimony because of her treatment history. *See Oliverio v. Colvin*, 2015 WL 1894299, at *6 (C.D. Cal. Apr. 27, 2015) (holding that an ALJ's failure to identify any other treatment options in the record that were currently recommended or available to the Plaintiff was not a "specific, clear and convincing reason to discount plaintiff's credibility").

This reason by the ALJ is not supported by substantial evidence. Plaintiff has undergone different procedures and tried several medications for her physical ailments. Plaintiff has completed more than a year of counseling and taken medications for her mental health. Accordingly, the ALJ erred in dismissing Plaintiff's testimony due to her "inconsistent" treatment history or purported "questionable engagement in therapy."

**2. Symptom Improvement**

A claimant's improvement with treatment is "an important indicator of the intensity and persistence of . . . symptoms." 20 C.F.R. §§ 416.929(c)(3), 404.1529(c)(3). "[E]vidence of medical treatment successfully relieving symptoms can undermine a claim of disability." *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017); *see also Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits.") Symptom improvement, however, must be weighed within the context of an "overall diagnostic picture." *Holohan*, 246 F.3d at 1205; *see also Lester v. Chater*, 81 F.3d 821, 833 (9th Cir. 1995) ("Occasional symptom-free periods . . . are not inconsistent with disability.").

The ALJ found that Plaintiff's symptom testimony conflicted with the record. AR 44. The ALJ cited instances of controlled pain, finding that by June 2017 Plaintiff's neck pain was controlled with amitriptyline, that by January 2018 Botox treatments had reduced Plaintiff's headaches by fifty percent, and that pain from Plaintiff's carpal tunnel syndrome could be controlled with medication after her surgical release procedure in August 2019. AR 44-46. Plaintiff asserts that although she has experienced some symptom improvement, her ailments still limit her. Plaintiff argues that the Treating Source Statements submitted to the Appeals Council support this claim.

The ALJ noted three signs of improvement in Plaintiff's neck pain. First, the ALJ determined that in June 2017, Plaintiff told her medical provider that she was "happy that amitriptyline is adequately treating her neck pain," and that this "indicat[ed] quite clearly that [Plaintiff's] pain was controlled." AR 44. Second, the ALJ noted that while "imaging from June 2018 showed mild reversal and normal cervical lordosis" and muscle spasms, there was "no acute radiographic abnormality of the cervical spine, and only mild multilevel cervical spondylosis and facet arthropathy." *Id.* The ALJ determined that this could be accounted for in the RFC. *Id.* Third, the ALJ stated that in 2019 and 2020, Plaintiff demonstrated a normal gait, "despite sometimes extreme contemporaneous subjective reports." *Id.*

These improvements, however, are not indicative of the overall diagnostic picture. *See Holohan*, 246 F.3d at 1205. In August 2017, Plaintiff testified that she had trouble with her neck and needed nearly constant support from a recliner. AR 156. Plaintiff contends that her cervical limitations did not cause abnormal gait. Medical records from 2018 show that Plaintiff described symptoms of "pain in the left neck, shoulder, and periscapular region that radiates into the arm and hand." AR 1087. The medical provider observed that Plaintiff had "tenderness to palpation

PAGE 13 – OPINION AND ORDER

in the left cervical paraspinal, trapezius, and rhomboid musculature with associated muscular rigidity," also noting myofascial nodules. AR 1088. The medical provider's impressions included: "Chronic muscular/myofascial left neck, shoulder, periscapular, and upper extremity pain syndrome with associated upper extremity referred symptoms including pain and paresthesias." *Id*. Medical records consistently show a diagnosis of cervicalgia from 2017 to 2019. *See* AR 1176, 1080, 113, 1100, 1159.

Plaintiff saw Nurse Giltner in July 2020 with chief complaints of neck and back pain as well as mental health challenges. AR 1140. Nurse Giltner's physical assessment of Plaintiff included: cervicalgia, facet arthropathy, and chronic pain in, among other things, her neck and arms. AR 1142. Nurse Giltner's November 2020 Treating Source Statement includes diagnoses for Plaintiff's chronic myofascial pain, cervicalgia, and fibromyalgia, and specifies that these ailments have lasted or were expected to last at least 12 months. AR 7. In the Treating Source Statement, Nurse Giltner assessed that Plaintiff would need to rest frequently due to pain issues and would miss more than four days per month of work due to neck and back pain, among other symptoms. AR 8, 11.

Although the ALJ is correct that Plaintiff's neck pain was likely controlled in 2017, a full examination of the record—including Nurse Giltner's November 2020 Treating Source Statement—shows that Plaintiff consistently sought treatment for neck pain throughout 2018 and 2020. For determining eligibility for SSI benefits, an impairment that can be effectively controlled with medication is not disabling, occasional relief from symptoms is not inconsistent with disability. *See Warre*, 439 F.3d at 1006; *Lester*, 81 F.3d at 833. Plaintiff's neck pain continued to remain adequately controlled with medication after 2017, although it is not clear

from the record. It instead appears that Plaintiff only experienced a temporary period of improvement. The ALJ's finding thus is not supported by substantial evidence.

The ALJ also determined that Plaintiff's migraines had improved by January 2018 with Botox treatments, stating: "While undoubtedly impacting [Plaintiff's] ability to perform basic work activities," the "debilitating limitations have been well controlled." AR 45. Plaintiff argues that even though the frequency and severity of her headaches have significantly improved, she still suffers one to two headaches per week, each lasting about two hours. The ALJ found that Plaintiff's testimony about the severity and frequency of her migraines was consistent after January 2018. *Id.*

Dr. Rajah's September 2020 Treating Source Statement supports Plaintiff's assertion that she is still being treated for headaches and describes Plaintiff's condition as "suffer[ing] debilitating migraines" that have lasted or are expected to last at least 12 months. AR 15-16. Dr. Rajah indicated that Plaintiff's symptoms include migraines up to 12 days per month with aura and severe pain and that, because of her condition, Plaintiff would miss more than four days of work per month and be "off task" 25 percent of the time of more. AR 16-17. At the hearing in July 2020, the vocational expert testified that, in his experience, absenteeism would be tolerated one day per month, but two or more days per month would lead to termination. AR 97-98. The vocational expert also said that leaving early or showing up late is "just as critical as being absent, and it would not be tolerated." AR 99. The ALJ did not find that Plaintiff no longer suffered from migraines, only that her migraines had improved enough to be accounted for in the RFC. AR 45. The RFC, however, does not address absenteeism or accommodate for excessive two-hour tardiness. Therefore, the vocational expert's testimony, and thus the RFC, conflict with the Treating Source Statement provided by Dr. Rajah and Plaintiff's testimony regarding her

reduced headaches, which is consistent with the ALJ's finding that Plaintiff's headaches improved around fifty percent. *Compare* AR 98-99, *with* AR 15-18. The ALJ appears to have treated Plaintiff's headaches as having *fully* improved instead of only improving by *half*.

The ALJ next determined that Plaintiff's pain could be controlled with medication after the carpal tunnel release procedure in August 2019. AR 46. Plaintiff argues that the treatment notes the ALJ references were taken less than two weeks after the procedure and that Plaintiff had limited the use of her hand. The medical evidence confirms that Plaintiff was seen twelve days after the release procedure, that Plaintiff's pain was "controlled on oral pain medication," and that—even with limited use—Plaintiff was experiencing, "some discomfort in the palm of her hand." AR 1175. In July 2020, Plaintiff testified that although she had experienced some improvement after the release procedure, she still had sharp pains in her hands and through her arms, particularly when doing repetitive motions. AR 79-80. Nurse Giltner's new treatment notes from July 2020 show that Plaintiff complained of chronic pain in her hands as well as other areas. AR 1142.

Notably, the ALJ gave lesser weight to Nurse Giltner's original opinion, finding that because Nurse Giltner failed to include handling and fingering limitations in her assessment, despite Plaintiff's focus on difficulty of using her hands in testimony, this inconsistency cast doubt on Nurse Giltner's assessed limitations. AR 45. There are two problems with this assessment. First, it is inconsistent for the ALJ to discount Plaintiff's testimony of ongoing problems with her hands as unsupported by the evidence and then discount Nurse Giltner's opinion because it did not include limitations relating to Plaintiff's fingering and handling given Plaintiff's ongoing complaints of difficulty with her hands. Second, the new evidence of the November 2020 Treating Source Statement from Nurse Giltner includes limitations for Plaintiff

when performing repetitive reaching, handling, and fingering. AR 10. Nurse Giltner's new Treating Source Statement also states that Plaintiff would require 30-60-minute breaks after using her hands before Plaintiff could perform handling or fingering again. *Id.* This evidence further supports Plaintiff's testimony regarding her limitations in her hands.

Considering all the evidence in the record, including the new 2020 Treating Source Statements from Nurse Giltner and Dr. Rajah, the ALJ's finding that Plaintiff's symptoms have improved is not supported by substantial evidence. Plaintiff experienced periods of symptom improvement but has consistently sought treatment for her physical challenges. The ALJ erred in discounting Plaintiff's symptom testimony due to symptom improvement.

### 3. Objective Medical Evidence

An ALJ may consider the lack of corroborating objective medical evidence as one factor in "determining the severity of the claimant's pain." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). The ALJ may not, however, reject subjective testimony solely because it was not fully corroborated by objective medical evidence. *Robbins*, 466 F.3d at 883; *see also* 20 C.F.R. § 404.1529(c)(2) (noting that the Commissioner "will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements").

Because this Court has concluded that the ALJ erred by rejecting Plaintiff's symptom testimony for the preceding reasons, lack of objective medical evidence is the only remaining reason. Accordingly, the symptom testimony may not be discounted "solely because" of a lack of objective medical evidence. *Id.* The ALJ erred by rejecting Plaintiff's symptom testimony.

**C. Remand**

Plaintiff requests that the Court credit as true Plaintiff's allegedly improperly discounted testimony and remand for an immediate award of benefits. Within the Court's discretion under 42 U.S.C. § 405(g) is the "decision whether to remand for further proceedings or for an award of benefits." *Holohan*, 246 F.3d at 1210 (citation omitted). Although a court should generally remand to the agency for additional investigation or explanation, a court has discretion to remand for immediate payment of benefits. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099-1100 (9th Cir. 2014). The issue turns on the utility of further proceedings. A court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence that has been improperly rejected by the ALJ to determine if a claimant is disabled under the Social Security Act. *Strauss v. Comm'r of the Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

In the Ninth Circuit, the "credit-as-true" doctrine is "settled" and binding on this Court. *Garrison*, 759 F.3d at 999. The court first determines whether the ALJ made a legal error and then reviews the record as a whole to determine whether the record is fully developed, the record is free from conflicts and ambiguities, and there is any useful purpose in further proceedings. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015). Only if the record has been fully developed and there are no outstanding issues left to be resolved does the district court consider whether the ALJ would be required to find the claimant disabled on remand if the improperly discredited evidence were credited as true. *Id.* If so, the district court can exercise its discretion to remand for an award of benefits. *Id.* The district court retains flexibility, however, and is not required to credit statements as true merely because the ALJ made a legal error. *Id.* at 408.

In this case, the medical evidence submitted to the Appeals Council from Nurse Giltner and Dr. Rajah creates additional conflicts and ambiguities in the record. The Commissioner

argues that neither the opinion from Nurse Giltner nor Dr. Rajah were reliable, and that Nurse Giltner's first opinion was rejected by the ALJ "for various unchallenged reasons," and thus the "ALJ's unchallenged reasons apply equally to the new opinion." Those reasons, however, were that Nurse Giltner did not record the length of her treating relationship or include limitations on handling and fingering. Nurse Giltner's new opinion includes the duration of her treating relationship with Plaintiff and includes limitations on handling and fingering. Thus, the ALJ's stated concerns with Nurse Giltner's previous opinion have been addressed in the new opinion. Nonetheless, there are conflicts and ambiguities created by the new evidence that an ALJ must consider on remand. For these reasons, a remand for benefits is not appropriate.

## CONCLUSION

The Commissioner's decision that Plaintiff was not disabled is REVERSED AND REMANDED for further proceedings consistent with this Opinion and Order.

**IT IS SO ORDERED**.

DATED this 22nd day of March, 2022.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge